FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CALEB V. DORMAIER, a single person,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SOAP LAKE, SOAP LAKE POLICE CHIEF RYAN COX, JUSTIN D. ROWLAND, individually and in his official capacity as a police officer for the City of Soap Lake,<br><br>　　　　Defendants. | No. 2:19-CV-00354-SAB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE** |

A video hearing was held in the above-captioned matter on November 5, 2020. During the hearing, the Court considered the following motions: (1) Defendants' Motion for Summary Judgment, ECF No. 22; (2) Plaintiff's Motion to Strike Portion of Affidavit of Justin Rowland in Support of Motion for Summary Judgment, ECF No. 25; and (3) Plaintiff's associated Motion to Expedite, ECF No. 26. Plaintiff was represented by Douglas Phelps. Defendants were represented by Christopher Kerley.

During the hearing, the Court orally denied Plaintiff's Motion to Strike, finding that the challenged portions of Officer Rowland's affidavit were not offered for the truth of the matter asserted and went to Officer Rowland's state of

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE \* 1**

mind. Having considered the briefing, the arguments made in the hearing, and the relevant law, the Court grants Defendants' Motion for Summary Judgment.

## Facts

The following facts are pulled from the First Amended Complaint, ECF No. 7, the parties' statements of material fact, and the body camera footage submitted in support of Defendants' motion. This case arises out of an incident between Plaintiff, Mr. Dormaier, and Officer Rowland on October 12, 2017. Around 11:13 a.m., Officer Rowland was dispatched to a physical domestic assault in Soap Lake, Washington. He was told by dispatch that N.C.,[1] an adult woman who lived at the address, was requesting police contact and alleging that she had been assaulted by Mr. Dormaier. Officer Rowland was aware that Mr. Dormaier had a history of domestic incidents with N.C., who was an ex-partner, and had recently been trespassed from her residence. Officer Rowland was also aware from other law enforcement reports that Mr. Dormaier had a history of displaying hostility toward law enforcement. While en route to N.C.'s home, dispatch advised Officer Rowland that a knife had been used in the alleged assault on N.C., and that Mr. Dormaier had fled the residence on a four-wheeler towards the canal road.

With his body camera activated, Officer Rowland interviewed N.C. She said that Mr. Dormaier came to her residence while her mother was home. Her mother told him he could not be there and that he needed to leave. At some point later, Mr. Dormaier allegedly returned to the residence, entering through an unlocked window, and walked into N.C.'s bedroom. She said she started to scream for her mother, but did not know that she had left. She then alleged that Mr. Dormaier pulled a kitchen knife out of his pocket, placed it on the television stand next to N.C.'s bed, and put a black pillow over her face; he allegedly said he put the pillow

---

[1] Because N.C. is not a party to this suit and is an alleged victim of domestic violence, the Court chooses to use her initials to refer to her instead of her full name.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE * 2**

over her face so no one would hear her scream. N.C. then reported that Mr. Dormaier took her cell phone and fled from the residence. N.C. then went to a neighbor's house to call for help. While meeting with N.C., dispatch advised that Mr. Dormaier had called in and left his phone number with dispatch, requesting to talk with Officer Rowland via cell phone.

N.C. showed Officer Rowland to her bedroom and showed him the knife and the pillow she alleged were used in the assault. She also showed him the window Mr. Dormaier came through; next to the window, Officer Rowland found a footprint on the seat of a barstool consistent with a sneaker-type shoe. N.C. told Officer Rowland the print must have been new because she had not seen it before. Officer Rowland finished speaking with N.C. and her neighbor, and then headed towards the canal road to see if he could find Mr. Dormaier. After he was done speaking with N.C. and her neighbor, he turned off his body cam and got into his car.

Officer Rowland drove over to the canal bank off Road A Northeast, where N.C. and her neighbor said Mr. Dormaier likely was, and located a man with an ATV. Officer Rowland pulled up Mr. Dormaier's most recent booking photo and identified the man as Mr. Dormaier. Although Officer Rowland was told by dispatch that Mr. Dormaier wished to speak with a law enforcement officer, based on his conversation with N.C. and what he observed at her home, Officer Rowland believed he had probable cause to arrest Mr. Dormaier for burglary and assault. Officer Rowland intended to arrest Mr. Dormaier for those crimes.

Officer Rowland turned his body camera on and stopped near Mr. Dormaier and the ATV. Officer Rowland got out of his patrol vehicle and asked Mr. Dormaier to take his hands out of his pockets and walk toward him. Mr. Dormaier complied. Officer Rowland then asked Mr. Dormaier to turn around and put his hands behind his back. As Officer Rowland reached for Mr. Dormaier's right arm to turn him around, Mr. Dormaier told Officer Rowland that he was not being

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE \* 3**

detained, that Officer Rowland could not do anything to him, and pulled away. He momentarily pulled his right arm back in a fist and yelled at Officer Rowland, but relaxed his hand and arm and asked why Officer Rowland was doing this to him. Mr. Dormaier swore at Officer Rowland. Officer Rowland responded, saying that he would tase Mr. Dormaier if he did not comply. Mr. Dormaier continued to yell at Officer Rowland and question his authority to detain him, again pulling away from Officer Rowland. Officer Rowland drew and pointed his taser and told Mr. Dormaier to get on the ground. Officer Rowland again told Mr. Dormaier that he would be tased if he did not comply. Mr. Dormaier shuffled away from Officer Rowland, and Officer Rowland followed to close the gap.

During this time, Mr. Dormaier can be heard on the body camera footage repeatedly saying he had not done anything illegal and asking for Officer Rowland to call another officer to the scene. Officer Rowland notified dispatch that he had a non-cooperative subject at taser-point and requested backup. Officer Rowland again ordered Mr. Dormaier to get on the ground. Mr. Dormaier got on his knees and asked that Officer Rowland not tase him. His back was to Officer Rowland at this point. Officer Rowland alleged that Mr. Dormaier's right hand was balled into a fist and that he could see a blue object in his hand; this is not clear from the body camera footage. Officer Rowland ordered Mr. Dormaier to put his hands on his head; instead, Officer Rowland alleges Mr. Dormaier put his hands in the front pocket of his sweatshirt. Officer Rowland also alleges that Mr. Dormaier put something in his mouth, but this is not clear from the body camera footage either. Officer Rowland again told Mr. Dormaier to put his hands on his head and that he was under arrest. In response, Mr. Dormaier talked animatedly with hands to protest the order and placed his hands in his sweatshirt pocket. He turned his head and asked "What am I being arrested for?". Officer Rowland replied that he was being arrested for burglary and assault.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE \* 4**

1  Officer Rowland alleges at this point that he became worried for his safety. Mr. Dormaier remained on his knees, but appeared to be standing up from his kneeling position and had not put his hands on his head. Officer Rowland tased Mr. Dormaier in the back, delivering one five-second cycle. Officer Rowland alleges that, as Mr. Dormaier was being tased and fell to the ground, he saw a black cell phone and a lighter come out of Mr. Dormaier's pocket. Officer Rowland instructed Mr. Dormaier to roll over onto his stomach and put his hands behind his back. Instead, Mr. Dormaier returned to his kneeling position on his knees. Officer Rowland tased Mr. Dormaier again, delivering a second five-second cycle. Mr. Dormaier slid down the embankment of the canal road, coming to rest about five feet from the road. Officer Rowland ordered Mr. Dormaier to come back to the road and lie down on his stomach. Mr. Dormaier complied. Officer Rowland then notified dispatch that he had used his taser and again requested backup. Officer Rowland also alleges that, when Mr. Dormaier was tased the second time and fell down the embankment, he saw a second lighter and cell phone come off of Mr. Dormaier's person.

Officer Rowland kept Mr. Dormaier on the ground until backup arrived. During this time, Mr. Dormaier can be heard saying things to Officer Rowland including "you're going to get killed," "you're going to end up dead," and "I'm not threatening, but karma!". Eventually, officers from the City of Ephrata and the Grant County Sheriff's Office arrived to assist in detaining Mr. Dormaier. Mr. Dormaier was later placed in the backseat of a patrol car. Grant County Sheriff's Deputy Bushy eventually transported Mr. Dormaier to the Grant County Jail. On December 6, 2017, Mr. Dormaier pled guilty to the crimes of assault in the fourth degree in violation of Wash. Rev. Code 9A.36.041(2) and domestic violence in violation of Wash. Rev. Code 10.99.201.

//

//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE \* 5**

**Procedural History**

Plaintiff originally filed a Complaint in the District of Idaho on October 10, 2019. ECF No. 1. The case was then transferred to the Eastern District of Washington at Plaintiff's request on October 16, 2019. ECF No. 3. A First Amended Complaint ("FAC") was filed on December 18, 2019. ECF No. 7. The FAC alleges two general causes of action. Cause of Action 1 alleges claims under the Fourth Amendment, the Washington State Constitution, and state law tort claims of assault, battery, and false imprisonment arising out of Officer Rowland's use of a taser. Cause of Action 2 alleges Defendants City of Soap Lake and Chief Cox negligently trained, retained, and supervised Officer Rowland. Specifically, Plaintiff alleges that the city and Chief Cox failed to have proper procedures in place to adequately document or investigate injuries to arrestees and failed to have proper procedures in place to assure that officers would take steps to protect citizens from assaultive behavior from fellow officers. Plaintiff seeks damages for past and future medical expenses, emotional/psychological counseling, loss of earnings, impairment of earnings capacity, and permanent and partial disability, and for pain and suffering and loss of enjoyment of life. He also seeks injunctive relief to prevent future actions to protect others similarly situated, including training or retraining officers of the City of Soap Lake Police Department.

**Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE \* 6**

the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When there is video footage, as there is here, and "[w]hen parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, the mere existence of video footage of an incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018); *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1161 n.6 (9th Cir. 2011) (finding that the number of times a plaintiff was hit by an officer with a baton was a question for the jury because a brief audio clip did not blatantly contradict the plaintiff's factual claim).

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323.

### Discussion

Defendants raise several grounds on which the Court should grant them summary judgment. First, they argue that Officer Rowland had probable cause to arrest Mr. Dormaier for burglary, robbery, assault, and interfering with a domestic

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE \* 7**

violence report. Second, they argue that Officer Rowland did not use excessive force when he deployed his taser twice on Mr. Dormaier. Third, they argue that, even if the Court concluded that Officer Rowland used excessive force, he is entitled to qualified immunity for his actions. Fourth, they argue that Plaintiff's First Amended Complaint fails to allege facts sufficient to establish liability against either the City of Soap Lake or Chief Cox. Finally, they argue that Plaintiff has failed to state a claim under Washington state law or the Washington state constitution.

The parties generally agree on the facts here. Insofar as there are disputes, the Court cannot ignore the body camera footage introduced by Defendants in support of their motion. To the extent Plaintiff's version of the facts is inconsistent with that record, the Court may not accept it to create a dispute of material fact because the body camera footage forecloses Plaintiff's version of events. *Scott*, 550 U.S. at 380; *Young*, 655 F.3d at 1161 n.6. The Court therefore finds that, based on the body cam footage, there are no genuine disputes of material fact.

1. Probable Cause Claim

Plaintiff claims that Officer Rowland violated his Fourth Amendment rights by detaining and arresting him without probable cause. Defendants argue that Officer Rowland did in fact have probable cause.

Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that the offense has been or is being committed by the person being arrested. *Rodis v. City & Cty. of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009). Whether an officer has sufficient knowledge or information to constitute probable cause to arrest is based on the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). If an arrest is supported by probable cause, then there is no violation of the Fourth Amendment.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE * 8**

Here, the facts show that Officer Rowland had taken a victim and witness statement from N.C. indicating that Mr. Dormaier entered N.C.'s home through a window, displayed a knife, covered her face with a pillow, and stole her phone. Based on the totality of the circumstances, this was probable cause to arrest Mr. Dormaier for the crimes of burglary, robbery, and assault. Because Officer Rowland had probable cause to arrest, there was no Fourth Amendment violation. Defendants' motion is granted as to this claim.

2. Excessive Force Claim and Qualified Immunity Defense

Plaintiff argues that Officer Rowland violated his Fourth Amendment rights by using excessive force when Officer Rowland tased him twice. Defendants argue that Officer Rowland did not use excessive force and, even if he did, he would be entitled to qualified immunity.

Qualified immunity protects government officials, including police officers, from liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability" and is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, courts should resolve questions of qualified immunity "at the earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

A police officer sued under § 1983 is entitled to qualified immunity unless it is shown by facts taken in the light most favorable to the plaintiff that the official violated a statutory or constitutional right that was "clearly established" at the time of the alleged misconduct. *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014). A right is clearly established if the right's contours are sufficiently definite such that the question confronted by the officer is beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Taylor v. Riojas*, 592 U.S. ----, Case No. 19-1261

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE * 9**

(November 2, 2020) (per curiam) (finding that, where the alleged misconduct is so egregious any reasonable officer would be on notice, plaintiff need not identify a case that is factually identical to survive qualified immunity). The right must not be described at too high a level of generality. *Id*. With regard to excessive force claims, the qualified immunity analysis is fact-intensive, and police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue in the case. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

The use of excessive force by a police officer may constitute a violation of the Fourth Amendment's prohibition against unreasonable seizures. *Lowry v. City of San Diego*, 858 F.3d 1248, 1254-55 (9th Cir. 2017) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Determining the objective reasonableness of a particular seizure requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. The factors a court should consider include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396-97. Whether an officer believes that the suspect poses an immediate threat to safety is the most important factor in this analysis. *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). In making this determination, courts should allow for the fact that police officers are often forced to make split-second judgments about the amount of force necessary in a particular situation and should not judge officers with the benefit of 20/20 hindsight. *Graham*, 490 U.S. at 396-97.

Relevant here, courts have concluded that the use of a taser in dart mode[2] is an intermediate, significant non-lethal level of force that must be justified by the

---

[2] Tasers generally have two modes: drive-stun, wherein the taser is pressed against a person's body, and dart mode, wherein aluminum darts attached to the taser by wires spring out and attach to a person's body. *Bryan*, 630 F.3d at 824. Tasers in

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE \* 10**

governmental interest involved. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010); *Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011). It has also been recognized that it is "undeniable that being 'tased' is a painful experience" and may result in immobilization, disorientation, loss of balance, and weakness even after the electrical current has ended. *Beaver v. City of Federal Way*, 507 F. Supp. 2d 1137, 1144 (W.D. Wash. 2007).

The Court acknowledges that the question of whether Officer Rowland used excessive force is a close call, and that reasonable juries could come to differing conclusions. Officer Rowland had probable cause to believe Mr. Dormaier had committed burglary, a crime which carries an inherent risk of violence. *Sandoval v. Las Vegas Metro. Police Dept.*, 756 F.3d 1154, 1163 (9th Cir. 2014). Based on the allegations made by N.C. and Officer Rowland's knowledge of Mr. Dormaier's previous interactions with law enforcement, Officer Rowland reasonably believed Mr. Dormaier might be armed with a weapon. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091 (9th Cir. 2013). Finally, Officer Rowland was the sole responding officer to deal with an admittedly frustrated and belligerent arrestee in a rural area, with back-up unable to promptly arrive. However, a jury could also give weight to the fact that Mr. Dormaier himself requested police contact and left a knife he allegedly carried at N.C.'s house, seemingly reducing the fact that he would respond to an officer with violence or attempt to flee. Furthermore, courts have recognized that an already completed robbery does not justify the use of extreme force. *See, e.g.*, *Collender v. City of Brea*, 605 Fed. App'x 624, 628 (9th Cir. 2015). In addition, to the extent Mr. Dormaier made statements that could have been construed as threatening, those statements were not made until *after* Officer Rowland had tased Mr. Dormaier twice. *See, e.g.*, *S.R. Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019).

---

dart mode are more powerful and deliver a higher charge than tasers in drive-stun mode.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE \* 11**

However, it is not clear that Officer Rowland's conduct was so obviously unconstitutional that he or any other reasonable officer would have been on notice of its unlawfulness. For example, in *Beaver v. City of Federal Way*, the Western District of Washington concluded that although an officer's first use of a taser was not excessive given the suspect's belligerence and the fact that the responding officer was alone, his second use of the taser was excessive, because by that time backup had arrived and the suspect was no longer actively resisting arrest. 507 F. Supp. 2d at 1144. Here, Officer Rowland was alone in a rural area with a resistant suspect, and backup was not certain to come quickly. Because there was no case law as of October 12, 2017 that unambiguously announced a right to not be tased in these circumstances that would have put Officer Rowland or another reasonable officer on notice, Officer Rowland is entitled to qualified immunity on Plaintiff's excessive force claim. Defendants' motion for summary judgment is therefore granted as to the excessive force claim.

3. <u>Municipal Liability Claim against City of Soap Lake</u>

Plaintiff asserts in his FAC that the City of Soap Lake should be held liable for the actions of Officer Rowland because it allegedly had an unconstitutional policy or practice that led to his injuries. Defendants argue they are entitled to summary judgment because Plaintiff has introduced no evidence of such a custom, policy, or practice; Plaintiff did not address this argument in his response.

A municipality cannot be held vicariously liable for its employees' constitutional violations. *Monell v. Dept' of Soc. Servs.*, 436 U.S. 658, 690 (1978). Instead, a municipality is liable in a § 1983 action only "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell*, 436 U.S. at 690). The plaintiff must show that the municipality's deliberate policy, custom, or practice was the "moving force" behind his constitutional injury. *Galen v. Cty. of*

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE \* 12**

*Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (quoting *Monell*, 436 U.S. at 694-95), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). The plaintiff can also meet this burden by showing the constitutional violation was the result of deliberate indifference to a known need to train or ratification by the city's chief policy maker. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). To meet this requirement, the plaintiff must show that the municipality's policy was both the proximate cause and the cause in fact of their injury. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). Proving that an injury or accident could have been avoided if an employee had better or more training to avoid the particular conduct at issue is not sufficient to establish deliberate indifference in this context; the failure to train or ratification must be done in deliberate disregard for a known or obvious consequence that would cause constitutional violations. *Connick v. Thompson*, 563 U.S. 51, 68 (2011); *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997).

In his FAC and response to Defendants' motion, Plaintiff does not identify evidence of any particular training provided or not provided by the City that would show a deliberate indifference to citizens' constitutional rights. He fails to identify any evidence of ratification by the City. Finally, he fails to show evidence of any custom, policy, or practice by the City that led to the injuries he suffered. Accordingly, Defendants' motion is granted and the claims against the City of Soap Lake are dismissed.

4. <u>Supervisory Liability Claim against Chief Cox</u>

Plaintiff alleges in his First Amended Complaint that Defendant Chief Cox should be held liable as Officer Rowland's supervisor. Defendants argue they are entitled to summary judgment dismissing these claims because Chief Cox did not directly participate in the incident here and did not direct or know of Officer Rowland's actions. They also argue that Plaintiff failed to show that any alleged

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE \* 13**

failure by Chief Cox to train or supervised Officer Rowland proximately caused his injuries. Plaintiff did not address this argument in his response.

A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). A plaintiff must show the supervisor breached a duty to the plaintiff and that breach was the proximate cause of plaintiff's injury. *Id.* This causal connection can be established by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007). A supervisor can also be held liable for his own actions or inaction in the training, supervision, or control of subordinates if the supervisor's action or inaction displays a "reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

As with the claims against the City, Plaintiff does not allege any specific actions taken by Chief Cox that led to Officer Rowland's encounter with him. Plaintiff has failed to allege facts sufficient to make out a supervisory or personal liability claim against Chief Cox. Accordingly, Defendant's motion is granted and the claims against Chief Cox are dismissed.

5. <u>State Law Claims</u>

Finally, Plaintiff's FAC alleges a number of claims under Washington state law and the Washington Constitution. Defendants argue that they are entitled to judgment on all of these claims because Plaintiff fails to state claims upon which relief could be granted. In response, Plaintiff argues that Officer Rowland lacked probable cause to arrest him and therefore states a viable claim for the torts of false

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE \* 14**

arrest and imprisonment, but does not address the arguments with regard to his constitutional claims, his negligent hiring claim, or his assault and battery claims.

The Court first considers Plaintiff's state constitutional claims. He alleges violations of Article I, Sections 3, 7, 14, and 35 stemming from Defendants' reckless and callous indifference to his constitutional rights and the failure to prevent injury to him. The Washington Supreme Court has held repeatedly that the Washington State Constitution does not automatically create an implied private right of action for constitutional violations. *Reid v. Pierce Cty.*, 136 Wash.2d 195 (1998). In general, if common law provides an adequate remedy for an injury, the Washington Supreme Court has declined to extend a private right of action unless there is some augmentative legislation creating such a right. *Blinka v. Wash. State Bar Assoc.*, 109 Wash. App. 575, 591 (2001).

The courts of Washington have already specifically held that there is no private right of action under Article I, Sections 3, 7, 14, and 35. *Janaszak v. State*, 173 Wash. App. 703, 723-24 (2013) (Section 3); *Reid*, 136 Wash.2d at 213-14 (Section 7); *Jones v. Washington*, No. 2:12-cv-0188-EFS, 2012 WL 3260411, at *4-*5 (E.D. Wash. Aug. 8, 2012) (Sections 14 and 35). Plaintiff also fails to show any augmentative legislation that would create a damages action for the alleged violations here. Defendant's motion for summary judgment is therefore granted and these claims are dismissed in their entirety.

Plaintiff also asserts a number of tort claims, including false arrest, false imprisonment, assault, and battery. Defendants argue they are entitled to judgment in their favor because Plaintiff fails to state any of those claims.

False arrest and false imprisonment are two distinct claims distinguished by the context in which each arises. *Bender v. City of Seattle*, 99 Wash.2d 582, 590 (1983). False arrest may be committed only by a person who has legal authority to arrest or who pretended to have legal authority to arrest. *Id.* In contrast, false imprisonment may be committed by private individuals without asserting or

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE * 15**

pretending to have legal authority. *Id.* In order to make out either claim, the plaintiff must show that he was deprived of his personal liberty or restrained from movement. *Id.* at 591. However, if an officer makes an arrest on the basis of probable cause, the plaintiff cannot hold them liable for false arrest. *Id.* at 592-93; *McBride v. Walla Walla Cty.*, 95 Wash. App. 33, 38 (1998), *rev'd,* --- Wash. App. ---, 990 P.2d 967 (1999). Furthermore, under Washington law, an officer cannot be held liable for an arrest based on probable cause. *See* Wash. Rev. Code. 10.99.070.

Because the Court has already found that Officer Rowland arrested Plaintiff on the basis of probable cause, Plaintiff fails to state a claim for false arrest or imprisonment as a matter of law. Furthermore, Officer Rowland would be entitled to statutory qualified immunity and may not be held liable. Accordingly, summary judgment in Defendants' favor is warranted.

Furthermore, Plaintiff's claims for assault and battery also fail. Officer Rowland is entitled to qualified immunity for the actions giving rise to Plaintiff's assault and battery claims, he is not entitled to recover on these tort claims. *See McKinney v. City of Tuckwila*, 103 Wash. App. 391, 408-09 (2000).

Finally, Plaintiff alleges Defendants City of Soap Lake and Chief Cox were negligent in hiring, training, retaining, and supervising Officer Rowland and that their negligence led to his injuries. Defendants argue they are entitled to summary judgment because they conceded that at all material times Officer Rowland was acting within the course and scope of his employment with the City of Soap Lake.

To hold an employer liable for negligently hiring, retaining, or supervising an employee who is incompetent or unfit, a plaintiff must show that the employer had knowledge of the employee's unfitness or failed to exercise reasonable care to discover their unfitness before hiring or retaining them. *Anderson v. Soap Lake Sch. Dist.*, 191 Wash.2d 343, 356 (2018). However, under Washington law, a negligent hiring claim is generally improper when the employer concedes the employee's actions occurred within the course and scope of employment. *LaPlant*

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE * 16**

*v. Snohomish Cty.*, 162 Wash. App. 476-479-80 (2011). Such claims are redundant and should be dismissed because an employer is already vicariously liable for the negligent acts of its employees if conducted within the scope of their employment. *Gilliam v. Dep't of Soc. & Health Servs.*, 89 Wash. App. 569, 585 (1998).

The City concedes that at all material times Officer Rowland was acting in the scope of his employment when he tased and arrested Mr. Dormaier. And as discussed above, Plaintiff alleged vicarious liability claims against both the City and Chief Cox. Accordingly, the negligent hiring claim should be dismissed as redundant. Defendant's motion is therefore granted.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Strike Portion of Affidavit of Justin Rowland in Support of Motion for Summary Judgment, ECF No. 25, is **DENIED**.

2. Plaintiff's Motion for Expedited Hearing Re: Motion to Strike, ECF No. 26, is **DENIED as moot**.

3. Defendants' Motion for Summary Judgment, ECF No. 22, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, enter judgment in Defendants' favor, and **close** the file.

**DATED** this 12th day of November 2020.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE \* 17**